## CARY v. COOPER.

### No. 17235.

Court of Appeal of Louisiana. Orleans.

April 8, 1940.

Gill & Simon and Joseph H. Baynard, all of New Orleans, for appellant.

John C. Foster, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by a tenant against his landlady for $300, alleged to be due as damages caused by physical injuries sustained by the tenant as the result of a fall caused by defective steps in the leased premises. The defendant admitted that the plaintiff was her tenant, but denied all other allegations of the petition and, in the alternative, pleaded contributory negligence.

There was judgment below in favor of defendant dismissing plaintiff's suit and he has appealed.

Plaintiff, who is referred to in the testimony as Reverend Henry Cary, was an unemployed negro preacher. He rented one room and a kitchen at 1318 Loyola Street in the City of New Orleans, from the defendant, Mrs. Nellie H. Cooper, agreeing to pay therefor $1 per week. At the time

of the alleged accident and, for sometime prior thereto, he was being supported by the City of New Orleans or the W. P. A. He testified that on the morning of November 26, 1938, he was walking down the stairs leading from his room on the second floor to the first floor with the intention of going to the lavatory, which was in the rear of the house, and that when he reached the third step from the bottom, it broke and caused him to fall to the ground landing on his buttocks. The only other testimony as to the fall was that given by a party by the name of George Williams, who was also an occupant of the premises. Williams testified that he answered Cary's call for help and found him lying down on the floor and noticed that a strip was broken off from the second step. He helped Cary back up the steps and into his bedroom and, at Cary's request, went downstairs again, picked up the piece of the broken step and brought it to Cary. He identified a piece of timber exhibited to him, which had been introduced in evidence, as the broken part of the step.

We think the evidence establishes the fact that a step on the stairway was defective in that it was split lengthwise. We have examined the piece of wood offered in evidence and identified as part of the broken step, and it has the appearance of having been split for sometime, but it is not in any sense rotten or decayed as plaintiff alleges. It is possible that the plaintiff did fall from the step, as he claims to have done, though the evidence to this effect, other than his own, consists entirely of the statement of his fellow lodger, George Williams, who did not see him fall but found him sitting near the broken step. But the proof concerning Reverend Cary's injuries is, to put it mildly, unsatisfactory.

Cary has some sort of insurance for which he paid 25 cents per week. The insurance company had in its employ a doctor by the name of James H. Murray. Murray, who was offered as an expert witness on behalf of the plaintiff, was not impressed with Cary's alleged injuries. He had been treating Cary for sometime prior to the alleged accident for pain in his knees and legs, acute arthritis and heart trouble and, when asked if Cary had ever had a paralytic stroke, answered "he told me that he had a little trouble of that kind". Murray finally stated that he refused to "bother with Brother Cary any more" and when asked what he meant by that replied that he believed in the Golden Rule, which he stated to be "do unto others as ye would have others do unto you". Explaining further he said that he thought Cary "had a fake case".

Cary, in his testimony, admitted that he had been treated by Murray for sometime and that he had had "a touch of a paralytic stroke", a bad heart and high blood pressure, but denied that he suffered from arthritis. He claims that the step had been broken for two or more months and that he had often complained about it to Mr. Smith, the agent of the landlady, without ever having been able to have it fixed. He admitted that he was about twenty-five weeks behind in his rent.

There is in evidence a letter written by Cary on October 25, 1938, about a month before the accident, to J. M. Smith, the agent of the landlady, which reads as follows:

"New Orleans—La oCt 25—1938 Mr. Jim. Smith ifeel that you can do me some Good by Riten to my visitor in my case His name is Mr. CarenCe LeBane 2528 Colton. St Visitor—of the W. P. A. Speak to him like this He is Bin Down with a Paleteec Stroke. He hase a Bad Hart and Hye Blood Presion and By that He is not able to do no thing for Him Self and that Little amount that you are sending is not anuf to keep Him in a Sheltor · He oes me Rent and if put out would take Plalee I would put him out So I wish you would do a litle Beter than that for Him i Hate to put Him out But if you dont do something for him I will Hafter

"Mr. Smith you right a Letter—to him in This Same Like Menner, for me and that will Helpe me His name is Mr. Llarence LeBanne 2528 Colton. Ave

"Henry Cary at 1318 Loyola St."

This letter was written a month before the accident and it is possible that the numerous maladies with which the Reverend Cary was afflicted may have so far improved by the time the accident is said to have happened, as to have had little or nothing to do with his fall, but this is exceedingly improbable and much more likely that his bad legs, arthritis or heart trouble was the cause of the accident if, indeed, there was an accident. Be that as it may, the letter is interesting in that it reveals something of Cary's character. It shows that he was an adroit, scheming negro, none too scrupulous, notwithstanding his ministerial occupation, for he was sug-

104

gesting to the agent of his landlady that he write to the Inspector of the Relief Agency whose bounty he was receiving, pretending that he was about to put him out of his quarters because of his failure to pay the rent, in order to have the amount of his dole increased. Moreover, it will be recalled that George Williams testified that immediately after he helped Cary back to his room Cary asked him to go and get the broken piece of step and bring it to him. We know of no use which Cary might have for this piece of broken step except as evidence in connection with this suit, which he subsequently brought against his landlady.

We have no faith in Cary's testimony and without it there is no basis for a judgment in his favor. Moreover, if Cary's fall was caused by defective steps and not on account of his many infirmities, we are convinced that he suffered little or no injury on that account, consequently, and for the reasons assigned, the judgment appealed from is affirmed.

Judgment affirmed.

McCALEB, J., absent, takes no part.